## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ERNEST C.,[1]

      Plaintiff,

                                  **Case No. 1:21-cv-20274**

    v.                           **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI[2],
**Acting Commissioner of Social Security,**

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Ernest C. for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. Pro. 25(d).

1

## I.    PROCEDURAL HISTORY

On December 16, 2019, Plaintiff filed his application for benefits, alleging that he has been disabled since December 3, 2019. R. 73, 86, 159–60. The application was denied initially and upon reconsideration. R. 87–91, 108–10. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 111–12. ALJ Sandra M. McKenna held a hearing on February 24, 2021, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 33–60. In a decision dated June 2, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 3, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 14–27. That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on November 16, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 13, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[3] On that same day, the case was reassigned to the undersigned. ECF No. 13. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016).  The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial

gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not

disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not

disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of

impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*.

at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC")

and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 50 years old on December 3, 2019, his alleged disability onset date. R. 25. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged disability onset date, and the date of the decision. R. 16. He meets the insured status requirements of the Social Security Act through December 31, 2024. *Id*.

At step two, the ALJ found that Plaintiff's panic disorder with agoraphobia and generalized anxiety disorder are severe impairments. *Id*. The ALJ also found that Plaintiff's lumbar radiculopathy, hyperlipidemia, urinary tract symptoms, and elevated body mass index ("BMI") were not severe impairments. R. 17.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 17–18.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels work, although the ALJ found that Plaintiff had various non-exertional limitations. R. 18–24. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a school bus driver. R. 24–25.

7

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as a dishwasher, an industrial cleaner, and a linen room attendant—existed in the national economy and could be performed by Plaintiff. R. 25–26. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 3, 2019, his alleged disability onset date, through the date of the decision. R. 27.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five and challenges the constitutionality of the appointment of the Commissioner. *Plaintiff's Memorandum of Law,* ECF No. 11; *Plaintiff's Reply Brief*, ECF No. 15. Plaintiff asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Id*. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14.

## IV.   DISCUSSION

Plaintiff raises a number of challenges to the ALJ's decision, including that the ALJ failed to properly consider the treating opinions of Shira Schaktman, Psy.D., and the third party witness statement of Plaintiff's sister, Amy Leeser. *Plaintiff's Memorandum of Law*, ECF No. 11, pp. 21–25, 28–29; *Plaintiff's Reply Brief*, ECF No. 15, pp. 5–7. For the reasons that follow, this Court agrees that the ALJ's error in considering this evidence warrants remand.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to

perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the

ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and

explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v.*

*Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34,

42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant

treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the

medical evidence in the record consistent with his responsibilities under the regulations and case

law."). Without this explanation, "the reviewing court cannot tell if significant probative

evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220

F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the regulations eliminated the hierarchy of

medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527

*with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer

or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)

or prior administrative medical finding(s), including those from [the claimant's] medical

sources"). Instead, the Commissioner will consider the following factors when considering all

medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant,

including the length of the treating examination, the frequency of examinations, and the purpose

of the treatment relationship; (4) the medical source's specialization; and (5) other factors,

including, but not limited to, "evidence showing a medical source has familiarity with the other

evidence in the claim or an understanding of our disability program's policies and evidentiary

requirements." 20 C.F.R. § 404.1520c(c).

---

[4] As previously noted, Plaintiff's claim was filed on December 16, 2019.

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). "Specifically, the ALJ must explain how [she] considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he [or she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

Plaintiff challenges the ALJ's consideration of the opinion of Plaintiff's treating psychologist, Dr. Schaktman. The record contains three undated letters signed by Dr. Schaktman:

I have been conducting virtual individual therapy with Ernest C[.] since July 13, 2020. Mr. C[.] qualifies for the diagnosis of Panic Disorder with Agoraphobia. *He suffers from panic attacks that limit his ability to function and leave his home.* Mr. C[.] reports that he has been unable to leave the confines of his home since December, 2019. He decided to seek out individual therapy due to the limited efficacy of his prescription of sertraline, 200 mg, on his condition.

I have been working with Mr. C[.] in order to decrease the severity of his panic attacks that have generated his agoraphobia. At this time, *Mr. C[.] remains confined to his home due to the debilitating anxiety that he experiences when he has attempted to leave.*

R. 685 (emphasis added).

I conducted virtual individual therapy with Ernest C[.] from July 13, 2020- December 28, 2020. Throughout the span of treatment, Mr. C[.] qualified for the diagnosis of Panic Disorder with Agoraphobia. *He suffered from severe panic attacks that limited his ability to function and leave his home.*

R. 706 (emphasis added).

I conducted virtual individual therapy with Ernest C[.] from July 13, 2020- December 28, 2020. Throughout the span of treatment, Mr. C[.] qualified for the diagnosis of Panic Disorder with Agoraphobia. *He suffered from severe panic attacks that limited his ability to function and leave his home.*

Mr. C[.] re-entered virtual individual therapy on February 23, 2021. His diagnosis remains Panic Disorder with Agoraphobia.

R. 707 (emphasis added).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with certain non-exertional limitations:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: perform simple, routine and repetitive tasks, but not at a production rate pace; make simple work-related decisions; occasionally interact with supervisors and coworkers; and never interact with the public.

R. 18. In crafting this RFC, the ALJ considered the evidence provided by Dr. Schaktman:

The record contains letters from Shira Schaktman, Psy. D. (Exhibits 9F, 11F and 12F). In undated letters, Dr. Schaktman indicated she conducted virtual individual therapy with the claimant from July 13, 2020 through December 28, 2020, and that he qualified for a diagnosis of panic disorder with agoraphobia. She indicated he suffered from severe panic attacks that limit his ability to function and leave his home (Exhibits 11F and 12F). She noted that the claimant reported that he was unable to leave his home since December 2019, and sought out individual therapy due to the limited efficacy of his medication, Sertraline. She indicated that the claimant remains confined to his home due to debilitating anxiety (Exhibit 9F). Dr. Schaktman noted that the claimant re-entered virtual therapy on February 23, 2021, and his diagnosis remains panic disorder with agoraphobia (Exhibit 12F).

R. 20. However, the ALJ went on to find this evidence unpersuasive, explaining as follows:

The undersigned does not find the opinion of Dr. Schaktman that the claimant is confined to his home due to the debilitating anxiety that he experiences when he has attempted to leave persuasive, noting that *the opinion does not specify limitations* and determinations of disability are reserved to Commissioner (Exhibit 9F).

R. 20 (emphasis added).

Plaintiff contends, *inter alia*, that Dr. Schaktman's opinion that Plaintiff suffers from panic attacks and debilitating anxiety that limit his ability to leave his home is supported by and consistent with other record evidence, and that the ALJ's reasons for discounting Dr. Schaktman's opinion lacks substantial support. *Plaintiff's Memorandum of Law*, ECF No. 11, pp. 21–22, 25. For her part, the Acting Commissioner agrees with the ALJ that Dr. Schaktman's notes contain no work-related limitation because they do not state what Plaintiff can do despite his impairments. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14, p. 22. The Acting Commissioner therefore contends that this evidence does not qualify as a medical opinion. *Id*. at 22–23 (quoting, *inter alia*, 20 C.F.R. § 404.1513(a)(2) (2017) (defining a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to

environmental conditions)).   In reply, Plaintiff insists that Dr. Schaktman's statements that Plaintiff's panic attacks and debilitating anxiety limit his ability to function and leave his home constitute a work-related limitation and therefore qualify as an opinion. *Plaintiff's Reply Brief*, ECF No. 15, p. 5. Plaintiff further insists that other record evidence supports this opined limitation. *Id*. at 5 (citations omitted).

Plaintiff's arguments are well taken. The ALJ found Dr. Schaktman's statements unpersuasive because, *inter alia*, "the opinion does not specify limitations[.]" R. 20. However, as set forth above, Dr. Schaktman specifically opined that Plaintiff suffers from panic attacks and debilitating anxiety that limit his ability to function and, particular, leave his home. R. 685, 706–07. An inability to leave one's home is unquestionably a functional limitation and the ALJ's reading of Dr. Schaktman's statements as offering no functional limitation is simply a mischaracterization of this evidence. R. 20. Based on this record, the Court cannot conclude that substantial evidence supports the ALJ's evaluation of Dr. Schaktman's opinion. *Cf. Brownawell v. Comm'r of Soc. Sec*., 554 F.3d 352, 357 (3d Cir. 2008) (reversing and remanding where, *inter alia*, "the ALJ mischaracterizes the evidence that does exist"); *Gleason v. Saul*, No. 19-cv-3713, 2020 WL 1975378, at *6 (E.D. Pa. Apr. 24, 2020) ("Mistakes and factual errors are not substantial evidence to support an ALJ's decision.") (citations omitted).

Moreover, the ALJ compounded this error when she further mischaracterized the observations of Plaintiff's sister, Amy Leeser, which are contained in the third party function reports dated February 4, 2020, and June 24, 2020. R. 24, 207–14, 273–87. Specifically, Ms. Leeser described how Plaintiff's anxiety and panic attacks impacted his ability to function, including how it limited his ability to leave his house. *See* R. 207 ("My brother only attends in home gatherings" and "He avoids going out to avoid panic attacks"), 210 ("He does not go out as

13

needed . . . He avoids <u>ALL</u> public / large places. He did not go to any graduations of myself / sibling.") (emphasis in original), 212 ("He cannot talk during panic attacks or when he feels he is judged."), 213 ("His anxiety leads to fleeing all conflicts / stress. He stays home and sits most of his days."), 214 ("He is very fearful and avoids social situations."), 273 ("He only attends in home gatherings. He cannot attend ceremonies or go to restaurants in large groups."), 279 ("He avoids all public/large places. He didn't go to any graduations of myself or siblings. . . . He cannot enter a store. . . . He won't spend money for irrational reasons."), 285 ("[H]e has irrational fears and constant panic[.] [H]e checks foods after his wife shops and will refuse to eat them if they are not sealed."). In rejecting this evidence from Ms. Leeser, the ALJ explained:

> The undersigned has considered the 2020 Third Party Function Reports from Amy Leeser, the claimant's sister, in accordance with Social Security Ruling (SSR) 16-3p. (Exhibits 4E and 10E). Specifically, the undersigned considered the personal observations from the claimant's sister in terms of how consistent those observations are with the claimant's statements about his symptoms, as well as with all of the objective medical evidence in the file. *The undersigned finds the opinions neither inherently valuable nor persuasive*, in accordance with 20 CFR 404.1520b(c). The undersigned notes that the claimant's medical records do not indicate frequent panic attacks and in fact, show limited treatment. Some notes indicate the claimant's symptoms were managed on medication, and the record indicates the claimant has not participated in cognitive behavioral therapy as recommended by a psychiatrist, or taken the medication prescribed by a psychiatrist. Notwithstanding these omissions, the undersigned notes that the opinions do not address the fact that the claimant retained the ability to work until fairly recently, despite the fact that he has carried this diagnosis for years.

R. 24 (emphasis added). However, the ALJ mischaracterized this evidence by labeling as "opinions" the observations of Ms. Leeser that appeared to corroborate Dr. Schaktman's opinions and Plaintiff's alleged inability to leave his house. The ALJ's justification for rejecting this lay evidence—*i.e.*, that it constituted "opinions"—does not sufficiently explain her rejection of such evidence.

14

Notably, an ALJ cannot reject evidence "for the wrong reason." *Cotter*, 642 F.2d at 706. In this case, the ALJ's reliance on the mischaracterization of opinion evidence and third party statements permeates the decision and cannot be separated from her reasoning in discounting Dr. Schaktman's opinion and Ms. Leeser's statements and, ultimately, the RFC determination. Substantial evidence does not support an ALJ's decision when that decision relies on a mischaracterization of the evidence. *Cf. Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) ("[T]he ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'") (quoting *Morales*, 225 F.3d at 317); *Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis."); *Senyzsyn v. Saul*, No. CV 18-4046, 2019 WL 3252950, at *8–9 (E.D. Pa. July 19, 2019) (remanding where, *inter alia*, the ALJ failed to consider case manager's testimony that "is corroborative of Plaintiff's testimony as to the sole issue at the heart of the case -- namely, whether he is able to leave his house on a consistent basis. This is particularly important because the ALJ found that Plaintiff's subjective complaints 'are not entirely consistent with the medical evidence and other evidence in the record'" and "resolution of this issue is crucial in light of vocational testimony that a person would be unable to sustain employment if they missed as many as four full days per month from full-time work, and that the ability to go to work on a regular basis is the requirement of any job").

Moreover, the ALJ's errors in this regard cannot be viewed as harmless where, as here, the ALJ—relying at least in part on her mischaracterization of the evidence—crafted an RFC for,

*inter alia*, occasional interaction with supervisors and coworkers with no limitations addressing, *inter alia*, the abilities to sustain an ordinary routine without supervision or to complete a workday without interruptions from psychological symptoms. *See* R. 18, 22. Significantly, the vocational expert testified, *inter alia*, that there would be no jobs in the national economy available to an individual who could never interact with supervisors, coworkers, or the public. R. 53–54. The vocational expert further testified that being off-task more than 10% on a consistent and regular basis or missing more than one day of work per month would preclude all work. R. 54–55.

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[5] Moreover, remand is appropriate even if, upon further examination of Dr. Schaktman's opinion, Ms. Lesser's third party statements, and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural

---

[5] Plaintiff asserts other errors in the Acting Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the Dr. Schaktman's opinion, Ms. Lesser's third party statements, and of the RFC determination, the Court does not consider those assertions.

.

activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## V.   CONCLUSION

Accordingly, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  December 4, 2023          _____*s/Norah McCann King*_____
                                            NORAH McCANN KING
                                            UNITED STATES MAGISTRATE JUDGE